IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| LOU NEMETH, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | Civil Action No. 3:24-CV-3087-D |
| | § | |
| ATP FLIGHT ACADEMY, LLC | § | |
| d/b/a ATP FLIGHT SCHOOL, et al., | § | |
| | § | |
| Defendants. | § | |

MEMORANDUM OPINION
AND ORDER

   Plaintiff Lou Nemeth ("Nemeth") sues defendants ATP Flight Academy, LLC d/b/a ATP Flight School ("ATP Flight") and ATP Jet Simulation, Inc. ("ATP Jet"), asserting a federal-law false association claim under § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), and various supplemental Texas state-law claims.  Defendants together move to dismiss under Fed. R. Civ. P. 12(b)(6) for failure to state a claim on which relief can be granted.  For the reasons that follow, the court grants the motion as to Nemeth's federal-law claim, declines to exercise supplemental jurisdiction over his pendent state-law claims, and grants him leave to replead.

I

   This lawsuit arises out of a flight school's alleged non-consensual use of footage of a demonstration performed by an aviation expert.[1]

---

   [1]The court recounts the background facts favorably to Nemeth as the nonmovant.  *See In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Martin K.*

Defendants operate a flight school that offers online and in-person pilot certification and training programs in Texas and Florida. Nemeth is an aviation safety expert. After working for US Airways for 27 years as a captain, pilot training manager, and instructor pilot, he joined CAE, Inc. ("CAE"), where he currently serves as Director of Flight Operations, Chief Pilot, and Pilot Instructor. He has served as a board member and advisor to institutions such as Embry-Riddle Aeronautical University and the Council of Aviation Accreditation; is type rated[2] on various aircraft; is an international aviation safety training collaborator, serving on, and often leading, committees of the International Civil Aviation Organization, Royal Aeronautical Society, and Federal Aviation Administration; and represents CAE as a keynote speaker at global aviation forums.

The instant dispute arose when defendants, as part of one of their pilot certification and training programs, and without Nemeth's consent, showed footage of a safety demonstration performed by Nemeth. In May 2016, regulators in Singapore invited Nemeth to demonstrate "Upset Prevention and Recovery Training."[3] Compl. (ECF No. 1) ¶ 18. As co-chair of the program that authored the Manual on Aeroplane Upset Prevention and

---

*Eby Constr. Co. v. Dall. Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)).

[2]A "type rating" is an "authorization entered on or associated with a [pilot] license . . , stating special conditions, privileges or limitations" regarding a certain type of aircraft. International Civil Aviation Organization, Annex 1 to the Convention on International Civil Aviation 1-6 (12th ed. 2018).

[3]"Airplane upset" is an "airline in flight unintentionally exceeding the parameters normally experienced in line operations or training[.]" U.S. Dep't of Transp., Advisory Circular No. 120-111 2 (2017).

Recovery Training, Nemeth was considered the leading authority on that technique.  Nemeth

accepted the invitation and performed the demonstration, which entailed sharing critical and

valuable information and expertise that is not widely known in the aviation industry.

Thereafter, footage of Nemeth's demonstration surfaced online, courtesy of a spectator who

had covertly filmed it.  Later, without Nemeth's consent, defendants showed the footage as

part of their Airline Transport Pilot Certification Training Program.  This lawsuit followed.

Nemeth's operative original complaint asserts claims against defendants for false

association under the Lanham Act, unfair competition under Tex. Bus. & Com. Code Ann.

§ 17.46, and misappropriation of likeness and unfair competition by misappropriation under

Texas state common law.  Defendants now together move to dismiss under Rule 12(b)(6) for

failure to state a claim on which relief can be granted.  Nemeth opposes the motion, which

the court is deciding on the briefs, without oral argument.

II

"In deciding a Rule 12(b)(6) motion to dismiss, the court evaluates the sufficiency of

[the plaintiff's] complaint by 'accept[ing] all well-pleaded facts as true, viewing them in the

light most favorable to the plaintiff.'"  *Bramlett v. Med. Protective Co. of Fort Wayne, Ind.*,

855 F.Supp.2d 615, 618 (N.D. Tex. 2012) (Fitzwater, C.J.) (second alteration in original)

(internal quotation marks omitted) (quoting *In re Katrina Canal Breaches Litig.*, 495 F.3d

191, 205 (5th Cir. 2007)).  To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must

plead "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v.*

*Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff

- 3 -

pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*; *see also Twombly*, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level[.]"). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'shown'—'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (alteration omitted) (quoting Rule 8(a)(2)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678.

III

The court turns first to Nemeth's Lanham Act false association claim.

A

The Lanham Act makes liable for "false association"

> [a]ny person who, on or in connection with any goods or services, . . . , uses in commerce any . . . false or misleading description of fact, or false or misleading representation of fact, which [] [] is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person.

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 122 (2014) (quoting 15 U.S.C. § 1125(a)(1)(A)). To state a false association claim under the Lanham Act, a

- 4 -

plaintiff therefore must plausibly plead, *inter alia*, a "likelihood of confusion." *See Chevron Chem. Co. v. Voluntary Purchasing Grps., Inc.*, 659 F.2d 695, 703 (5th Cir. Unit A Oct. 1981) (explaining with regard to the Lanham Act that "the basic test under every type of 'unfair competition' is the 'likelihood of confusion' test").[4]  That is, a plaintiff must allege facts from which the court can draw the reasonable inference that the defendants' use of the plaintiff's likeness would create confusion in the mind of the ordinary consumer as to the relationship between the plaintiff and the defendants or the defendants' product or service.[5] *See Xtreme Lashes, LLC v. Xtended Beauty, Inc.*, 576 F.3d 221, 226 (5th Cir. 2009); *Conan Props., Inc. v. Conans Pizza, Inc.*, 752 F.2d 145, 149 (5th Cir. 1985).

The Fifth Circuit has enumerated eight factors for determining whether there is a likelihood of confusion. *Am. Rice, Inc. v. Producers Rice Mill, Inc.*, 518 F.3d 321, 329 (5th Cir. 2008).[6]  These factors, however, are framed in terms of trademark infringement claims.

---

[4]*See also RRK Foods Inc. v. Sree Nidhi Corp.*, 2022 WL 3636676, at *5 (N.D. Tex. Aug. 23, 2022) (Fish, J.) (requiring false association claimant to plead likelihood of confusion); *Transparent Energy LLC v. Premiere Mktg. LLC*, 2020 WL 4678438, at *6 (N.D. Tex. July 28, 2020) (Rutherford, J.) (same), *rec. adopted*, 2020 WL 4673102 (N.D. Tex. Aug. 12, 2020) (Lindsay, J.); *Electra v. 59 Murray Enters., Inc.*, 987 F.3d 233, 257 (2d Cir. 2021) (same); *Facenda v. N.F.L. Films, Inc.*, 542 F.3d 1007, 1014 (3d Cir. 2008) (same).

[5]The court uses the term "relationship" as a shorthand for "the affiliation, connection, or association of [the defendants] with [the plaintiff], or [] [] the origin, sponsorship, or approval of [the defendants'] goods, services, or commercial activities by [the plaintiff]." 15 U.S.C. § 1125(a)(1)(A).

[6]They are: "(1) strength of the plaintiff's mark; (2) similarity of design between the marks; (3) similarity of the products; (4) identity of retail outlets and purchasers; (5) similarity of advertising media used; (6) the defendant's intent; (7) actual confusion; and (8) degree of care exercised by potential purchasers." *Oreck Corp. v. U.S. Floor Sys., Inc.*, 803 F.2d 166, 170 (5th Cir. 1986).

*See Oreck Corp. v. U.S. Floor Sys., Inc.*, 803 F.2d 166, 170 (5th Cir. 1986) (emphasis added) (stating as factors, *inter alia*, the "strength of the plaintiff's *mark*" and the "similarity of design between the *marks*").  The court must therefore adapt them to a false association claim.[7]

Although the Fifth Circuit has not adopted the Third Circuit's formulation, this court deems it persuasive.  The Third Circuit considers: (1) the level of recognition that the plaintiff has among the segment of the society for whom the defendants' product or service is intended; (2) the relatedness of the fame or success of the plaintiff to the defendants' product or service; (3) the similarity of the likeness used by the defendants to the actual plaintiff; (4) evidence of actual confusion; (5) marketing channels used; (6) the likely degree of purchaser care; (7) the defendants' intent in selecting the plaintiff; and (8) the likelihood of expansion of the product or service.  *Facenda v. N.F.L. Films, Inc.*, 542 F.3d 1007, 1019-20 (3d Cir. 2008) (citing *Downing v. Abercrombie & Fitch*, 265 F.3d 994, 1007-08 (9th Cir. 2001)).

These factors comprise "a flexible and nonexhaustive list.  They do not apply mechanically to every case and can serve only as guides, not as an exact calculus." *Paulsson Geophysical Servs., Inc. v. Sigmar*, 529 F.3d 303, 311 (5th Cir. 2008) (per curiam) (quoting

---

[7]In *Brandtjen & Kluge, Inc. v. Prudhomme*, 765 F. Supp. 1551 (N.D. Tex. 1991) (Fitzwater, J.), this court added three factors to the likelihood of confusion test where the case involved the sale of altered products that retained the trademark of the original manufacturer.  In doing so, the court reasoned that "[c]ertain of the elements in the usual formulation appear categorically to be of little value when determining likelihood of confusion in the case of a rebuilt product sold under the original trademark." *Id.* at 1567.

*Scott Fetzer Co. v. House of Vacuums Inc.*, 381 F.3d 477, 485 (5th Cir. 2004)). "The absence or presence of any one factor ordinarily is not dispositive; indeed, a finding of likelihood of confusion need not be supported even by a majority of the [] factors." *Conan Props.*, 752 F.2d at 150. The factors "may weigh differently from case to case, depending on the particular facts and circumstances involved." *Xtreme Lashes, LLC*, 576 F.3d at 227 (internal quotation marks omitted).

Additionally, although fact-intensive and highly contextual, the likelihood-of-confusion issue may be decided at the motion to dismiss stage. *See Jim S. Adler, P.C. v. McNeil Consultants, L.L.C.*, 10 F.4th 422, 428 (5th Cir. 2021). The court can dismiss a Lanham Act claim for failure to plausibly plead a likelihood of confusion if "the factual allegations regarding consumer confusion are implausible[.]" *Id.* at 428-29; *see also Varsity Spirit LLC v. Varsity Tutors, LLC*, 2022 WL 1266030, at *6 (N.D. Tex. Apr. 28, 2022) (Fitzwater, J.) (collecting supporting authority).

B

Defendants contend that Nemeth has failed to state a Lanham Act claim on which relief can be granted because he has failed "to plead a plausible likelihood of consumer confusion." Ds. Br. (ECF No. 22) at 6. Defendants maintain that Nemeth "lacks sufficient notoriety to cause consumer confusion," *id.* at 8; he "is not a household name and is unlikely to be recognized by consumers," *id.* at 9; and the footage of his demonstration does not feature his name or the front of his face. Thus, defendants argue, "it is simply implausible that consumers are likely to be confused into thinking that [Nemeth] was endorsing

[defendants' training program]." *Id.* at 10.

Nemeth responds that he has "adequately stated a claim under the Lanham Act because consumer confusion is an issue of fact, he has adequately alleged his notoriety, and the law does not require his face to be visible in the video." P. Resp. (ECF No. 25) at iii. He maintains that: he "has pled facts that indicate he has achieved fame in the aviation industry," *id.* at v; because "he is specifically known for training pilots on aviation safety," defendants' non-consensual use of footage of his demonstration in its training program is directly related to his notoriety, *id.*; by using video footage of him, defendants utilized Nemeth's "exact likeness," *id.*; and even if his face was not "adequately visible in the video, his voice—a recognized component of likeness—is sufficiently recognizable to state a claim," *id.* at ix. Nemeth also maintains that defendants intended to cause consumer confusion, as evidenced by the fact that his former colleague, Shane Kelly, contributed to defendants' training program while having knowledge of "the substantial contribution that [Nemeth]'s demonstration and association would bring to the Program and recogniz[ing] the significant value of knowledge and information conveyed in [his] demonstration." *Id.* at vi.

## C

The court concludes that Nemeth has failed to satisfy the plausibility standard with regard to likelihood of confusion.

The complaint and the briefing implicate four of the *Facenda* factors:[8] the level of

_____

[8]The court confines its analysis, as it may, to these four factors. *See Varsity Spirit LLC*, 2022 WL 1266030, at *6 (footnote omitted) ("At the motion to dismiss stage, the

recognition that Nemeth has among the segment of the society for whom defendants' product or service is intended; the relatedness of his fame or success to defendants' product or service; the similarity of the likeness used by defendants to him; and defendants' intent in selecting him.

The second and third of these factors weigh in favor of consumer confusion. Nemeth has alleged in detail his notoriety as an aviation safety expert, which is highly related to defendants' product or service—pilot certification and training programs. And Nemeth has alleged that defendants used footage that depicts him performing a demonstration, which constitutes a use of his exact likeness.[9]

The first and fourth of these factors weigh against consumer confusion. Nemeth has not plausibly alleged that he is recognizable among the segment of the society for whom defendants' product or service is intended: pilots in training. That Nemeth is an aviation safety expert who is well-known in that industry does not invite the reasonable inference that *aspiring* aviators would know of him at all, let alone well enough to recognize him from the sight of the back of his head or the side of his face or the sound of his voice. Nor has Nemeth

_____

court—without having to consider each factor—asks only whether there are sufficient facts to state a plausible claim of consumer confusion.").

[9]The court acknowledges that the footage, which defendants have attached to the motion to dismiss and which the court may consider because it is referenced throughout the complaint and is central to Nemeth's claims, *see Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000), depicts only the back of Nemeth's head and the side of his face. The court assumes *arguendo* that this depiction and/or the accompanying audio of Nemeth's voice constitutes a use of his exact likeness, because the court concludes that, even so, Nemeth has not plausibly pleaded likelihood of confusion.

- 9 -

plausibly alleged that defendants selected him with the intention of confusing their consumers. That defendants' former vice president contributed to coordinating defendants' pilot certification and training program while having knowledge of Nemeth's notoriety and his potential value to the program does not reasonably support that inference.

Considered together, Nemeth's factual allegations with regard to consumer confusion do not plausibly plead likelihood of confusion. Accepting Nemeth's well-pleaded allegations as true, and drawing all reasonable inferences in his favor, Nemeth has not plausibly pleaded that defendants' use of the footage of Nemeth's demonstration would create confusion in the mind of the ordinary consumer as to the relationship between Nemeth and defendants or their pilot training and certification program. Whatever notoriety Nemeth has in the aviation industry, he has not plausibly pleaded that the use of his likeness, without more, is likely to confuse consumers who do not recognize him to begin with.

Accordingly, the court dismisses Nemeth's Lanham Act claim for failure to state a claim on which relief can be granted.

IV

Having dismissed Nemeth's federal-law claim, the court in its discretion declines to exercise supplemental jurisdiction over his state-law claims. *See Brookshire Bros. Holding, Inc. v. Dayco Prods., Inc.*, 554 F.3d 595, 602 (5th Cir. 2009) ("The general rule is that a court should decline to exercise jurisdiction over remaining state-law claims when all

federal-law claims are eliminated before trial[.]").[10]  Accordingly, the court dismisses Nemeth's state-law claims without prejudice.

V

Although the court is dismissing Nemeth's federal-law claim, it will permit him to replead.  *See, e.g., In re Am. Airlines, Inc., Privacy Litig.*, 370 F.Supp.2d 552, 567-68 (N.D. Tex. 2005) (Fitzwater, J.) (noting that district courts often afford plaintiffs at least one opportunity to cure pleading deficiencies before dismissing case, unless it is clear that defects are incurable or plaintiffs advise court that they are unwilling or unable to amend in a manner that will avoid dismissal).  There is no indication that Nemeth cannot, or is unwilling to, cure the defects that the court has identified.  Accordingly, the court grants Nemeth 28 days from the date this memorandum opinion and order is filed to file a first amended complaint.

*    *    *

For the reasons explained, the court grants defendants' March 10, 2025 motion to dismiss and grants Nemeth leave to file a first amended complaint within 28 days of the date this memorandum opinion and order is filed.

**SO ORDERED**.

April 18, 2025.

SIDNEY A. FITZWATER
SENIOR JUDGE

___

[10]It appears from Nemeth's original complaint that the parties are not completely diverse citizens.

- 11 -